<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LISA LYLO, | : | |
| | : | Civ. No. 05-2670 (GEB) |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| DENNIS SMITH, BOROUGH OF | : | |
| KEANSBURG, AND JOHN DOES 1-10 | : | |
| (a fictitious name), | : | |
| | : | |
| Defendants. | : | |

**<u>BROWN, Chief Judge</u>**

This matter comes before the Court upon Defendant Borough of Keansburg's ("Defendant") motion for summary judgment of Plaintiff Lisa Lylo's ("Plaintiff") Complaint. The Court decided the motion based upon the parties' submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendant's motion for summary judgment is granted in part and denied in part.

## I.  BACKGROUND

Defendant Dennis Smith ("Smith") was a police officer employed by Defendant Borough of Keansburg. On April 29, 2004, Smith was on patrol duty and encountered Plaintiff. The facts surrounding what occurred next are in dispute, however, for purposes of this motion, Plaintiff got into Smith's car and they drove to a marina where they engaged in a sexual act. Plaintiff reported the incident to the Keansburg Police Department, claiming that Smith sexually assaulted her. Smith

was suspended without pay on May 7, 2004 as a result of the incident.  Smith was indicted by the Monmouth County Grand Jury and plead guilty to the charges of criminal restraint and criminal sexual conduct in May 2005.  Smith was sentenced to probation and forfeited his public employment as a police officer with the Borough of Keansburg.

Prior to the Lylo incident, in May 2001, the Keansburg Police Department was subject to an investigation. The Borough Council investigated the operations of the Keansburg Police Department and as a result, Police Chief Raymond B. O'Hare was suspended from duty from March 2002 until November 2004.  Deputy Police Chief Thomas Pigott and Inspector Joseph Auer were also suspended and charged with a series of administrative charges. Lt. Michael Kennedy was appointed acting chief and served until September 2002, when one or more officers from the Monmouth County Prosecutor's Office managed the department.  The Borough then hired Edward McCabe as the Police Director of Keansburg Police Department from April 2003 until June 2004.

McCabe was given a mandate to professionalize the police department and to run the day-to-day operations.  McCabe was to address various problems, including the use of police authority in connection with politics, the high crime rate in Keansburg and the use of excessive force.  While conducting his investigation, McCabe found that officers were spending time on their shifts outside of town, there was no central repository for Internal Affairs records, the supervision of police officers was lacking, the officers' morale was low and the younger officers were harassed by senior officers. McCabe also began writing Standard Operating Procedures for the Department and issued directives to address training and standards issues.  In terms of specific reports of Smith's behavior, in March 2004, McCabe received a complaint from a female employee that she was being harassed by Smith. The report indicated that Smith made inappropriate comments to the employee.  McCabe told Smith

2

that if he made such comments again he would be disciplined.  During his deposition, Smith also testified that he heard rumors and heard officers talk about "hooking up" with women while on duty. According to Smith, officers conducted personal business while on patrol.

Plaintiff filed a Complaint on March 15, 2005 against Smith and Defendant Borough of Keansburg.  Plaintiff's allegations against the Borough of Keansburg include vicarious liability for the assault; negligent supervision and retention of Smith; vicarious liability due to foreseeable conduct; inadequate training, investigation, failure to discipline and adequately supervise constituting deliberate indifference under 42 U.S.C. § 1983; and violations of Article I and a denial of civil rights on the basis of gender pursuant to the New Jersey State Constitution.  Defendant Borough of Keansburg moved for summary judgment on August 11, 2006.  Defendant Smith has not submitted a motion for summary judgment as to the specific counts against him.

## II. DISCUSSION

### A. Standard for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict

in its favor).  In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof on a claim.  Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."  Anderson, 477 U.S. at 255.

Under the Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains.  See Celotex, 477 U.S. at 324.  Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id. at 322 n.3, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S. at 247-48 (stating that "[b]y its very terms, this standard provides that the mere existence of *some*

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)(stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)(stating that "[t]o raise a genuine issue of material  fact, . . . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact.").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1.  "Where possible, a single joint Rule 56.1 statement is favored."  Allyn Z. Lite, New Jersey Federal Practice Rules 192 (2006 ed.)(citations omitted). "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'" Id. at 193 (citations omitted).  However, "the parties' statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error."  Id. (citation omitted).

## B. Plaintiff's Claims of Vicarious Liability for the Assault

In the Complaint, Plaintiff claims that Defendant is vicariously liable for the assault committed by Smith because he was acting within the scope of his employment at the time of the

incident and because Smith's actions were reasonably foreseeable.   Compl., Counts IV, VII.   The New Jersey Torts Claims Act, N.J.S.A. 59:1-10 states that "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct."   The doctrine of respondeat superior renders an employer vicariously liable for the tortious conduct of its employee "only when the employee acts within the scope of employment." Rogers v. Jordan, 339 N.J. Super. 581, 586 (App. Div. 2001) (citing Gilborges v. Wallace, 78 N.J. 342, 351 (1978)).   The scope of employment standard "refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment."   DiCosala v. Kay, 91 N.J. 159, 169 (N.J. 1982).   Conduct is generally considered to be within the scope of employment if "it is the kind [that the servant] is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part, by a purpose to serve the master."   Id. (quoting Restatement (Second) of Agency § 228 (1957)).

Because Smith was convicted of the sexual assault, Defendant Borough of Keansburg is not liable for the assault itself based solely on the theory of  vicarious liability as set forth in the Torts Claims Act.  Further, in order to hold Defendant vicariously liable for the assault under the theory that Smith was acting within the scope of his employment, Plaintiff must show that the assault was performed to carry out the objectives of the Keansburg Police Department. Plaintiff has not put forth any evidence to support that this assault was within the scope of Smith's employment.  Therefore, summary judgment is granted as to Counts IV and VII.

**C.  Plaintiff's 42 U.S.C. § 1983 Claims**

While it cannot be held accountable for the assault based solely on the doctrine of respondeat superior, Defendant Borough of Keansburg may be liable for the alleged misconduct of its employees if Plaintiff can show that the Borough established a policy, practice or custom followed by said employee.  Monell v. Dept. of Social Servs. of New York, 436 U.S. 658, 691 (1978); MB v. City of Philadelphia, 2003 WL 733879 (E.D.Pa. 2003) (utilizing same standard to state law claims).  Defendant will not be held liable under a respondeat superior theory of liability, however.  Monell, 436 U.S. at 663.  Moreover, "when a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged [action] implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom."  Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996);  see also Monell, 436 U.S. at 691.

> A government policy or custom can be established in two ways.  Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict.  A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law.

Beck at 971 (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990); see also Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).  A custom may also be established by evidence of knowledge of the misconduct and acquiescence in the continuing action.  Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989).  In addition, there must be a direct causal link between a municipal policy or custom and the alleged constitutional violation.  Chernavsky v. Twp. of Homdel Police Dep't, 136 Fed. Appx. 507, 509 (3d Cir. 2005) (citing Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004); Brown v. Muhlenberg Twp, 269 F.3d 205, 214 (3d Cir. 2001)).  A plaintiff must demonstrate "that a municipal decision reflects deliberate indifference

7

to the risk that a violation of a particular constitutional or statutory right will follow the decision." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 411 (1997). "It is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Id. at 404.

Plaintiff alleges that Defendant's customs of inadequate training, inadequate investigation of misconduct, failure to discipline and failure to adequately supervise officers are directly linked to the assault. Plaintiff offers the expert opinion of Dr. R. Paul McCauley[1] in addition to facts involving police officers "hooking up" with women while on duty, failure to supervise officers, failure to train and discipline officers and a lack of formalized tracking of complaints against individual officers in the Borough of Keansburg. The Keansburg Police Department was under investigation for such practices, and the chief of police was removed for a number of years while a police director was put in charge of professionalizing the department. Defendant contends that the police department did not create a custom or show deliberate indifference to the risk that this custom would lead to Plaintiff's § 1983 constitutional violation, particularly because the appointed police director was addressing the department's previous problems. Therefore, a material issue of fact exists as to whether Defendant Borough of Keansburg established a custom which lead to the assault and whether the new police director addressed these alleged customs or if they were remedied by the time of the assault. Summary judgment is denied as to Counts VII, IX, X and XI.

---

[1] The pending motion in limine to bar the expert report of Dr. McCauley is referred to Magistrate Judge Hughes for decision.

### D. **Plaintiff's Negligent Supervision and Retention Claims**

The Court in <u>Denis v. City of Newark</u>, 307 N.J. Super. 304, 314 (App. Div. 1998), recognized that liability may exist against a public entity for "its negligent retention of a police officer who presents a clear public danger." A negligent supervision claim exists if the Defendant knew or should have known of [the defendant police officer's] dangerous propensities . . .[and] the risk of injury he presented to the public. <u>Id.</u>; <u>see also</u> <u>DiCosala v. Kay</u>, 91 N.J.159, 173-74 (1982) ("the tort of negligent hiring has...two fundamental requirements . . . knowledge of the employer and foreseeability of harm to third persons . . . An employer will only be held responsible for the torts of its employees beyond the scope of employment where it knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons . . . through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury.").

The record in this case presents evidence that Smith had a previous history of wrongdoing that may have alerted the Borough of Keansburg or the police department as to his dangerous propensities. More specifically, Plaintiff presents evidence that Smith's record contained a complaint involving harassment of a female employee a few months before the Lylo incident. Further, the acting police director observed that the police officers in Keansburg were inadequately supervised, leading them to ignore citizens' complaints and spend on duty patrol time out of their jurisdictions. Viewing these facts in a light most favorable to Plaintiff, a genuine issue of material fact exists as to whether Defendant was negligent in its supervision and retention of Smith. Therefore, summary judgement as to Counts V and VI is denied.

### E.  Plaintiff's Other Claims

Plaintiff also claims that her rights were violated pursuant to Article I of the New Jersey Constitution.  The Court notes that Plaintiff did not oppose Defendant's motion for summary judgment with respect to these civil rights claims and thus did not put forth any evidence that these acts were committed against Plaintiff based on her gender beyond the allegations in the Complaint (Counts XI and XII).  Therefore, pursuant to the standard set forth above, summary judgment is granted in favor of Defendant with respect to those claims.

Defendant also contends that punitive damages are inappropriate in this case. Punitive damages cannot be awarded against a municipality pursuant to 42 U.S.C. § 1983.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); McCullough v. City of Atlantic City, 137 F.Supp. 2d 557, 570 (D.N.J. 2001).  Further, punitive damages are not available against a public entity as set forth in the New Jersey Torts Claim Act.  N.J.S.A. 59:9-2(c); Widener v. Borough of Ramsey, 316 N.J. Super. 487, 508-509 (App. Div. 1998).  Therefore, Plaintiff is not entitled to recover punitive damages from Defendant under Counts V, VI, VII, IX, X and XI.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in part and denied in part.  An appropriate form of order accompanies this Memorandum Opinion.

Dated: October 19, 2006

    s/ Garrett E. Brown, Jr.
    GARRETT E. BROWN, JR., U.S.D.J.